**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **MARIO M. MITCHELL,** | ) |
| | ) |
| *Plaintiff,* | ) |
| -vs- | ) |
| | ) **Case No.** _____ |
| **JOHN DRAKE, in his official** | ) |
| **capacity as the Chief of Police for the** | ) **JURY DEMAND** |
| **Metropolitan Government of** | ) |
| **Nashville and Davidson County,** | ) |
| **Tennessee, as well as his individual** | ) |
| **capacity; WATECHIA LAWLESS** | ) |
| **MITCHELL; CHRISTOPHER** | ) |
| **DICKERSON, in his individual** | ) |
| **capacity; and MICHAEL** | ) |
| **ESPOSITO, in his individual** | ) |
| **capacity;** | ) |
| | ) |
| *Defendants.* | ) |

## C O M P L A I N T

COMES NOW THE PLAINTIFF, MARIO M. MITCHELL, and sues the Defendants, JOHN DRAKE, WATECHIA LAWLESS MITCHELL, CHRISTOPHER DICKERSON, and MICHAEL ESPOSITO, and would state as follows:

**I.**
**Introduction**

1. In April of 2024, Mario Mitchell discovered that his wife Watechia Mitchell, who was employed in the Mayor's Office, was having a romantic affair with Metro Chief of Police, John Drake. When details of Mr. Mitchell's awareness of the affair reached the Chief of Police and the Mayor's Office, he became the

target of retaliation by government law enforcement in a coordinated effort to silence or discredit him through abuse of process, malicious criminal prosecution and police harassment and intimidation. For a period of two years, Mr. Mitchell endured wrongful arrest, police misconduct, public humiliation, devastating loss and personal injury all as a proximate result of the Defendants' coordinated efforts carried out under color of state law. Plaintiff alleges that Police Chief John Drake, and to a lesser degree, Captain Christopher Dickerson and Detective Michael Esposito, were complicit in this pattern of police misconduct and retaliation against the Plaintiff.

2. The Plaintiff seeks compensatory and punitive damages pursuant to 42 U.S.C. § 1983, for violation of his constitutional rights under the First, Fourth and Fourteenth Amendments of the United States Constitution, and an award of reasonable attorney's fees as provided in 42 U.S.C.§ 1988.

## II.
### Jurisdiction and Venue

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, for Plaintiffs' claims brought under 42 U.S.C. § 1983 and is empowered to exercise supplemental jurisdiction over the state court claims alleged herein under 28 U.S.C. § 1367.

4. This Court has personal and subject matter jurisdiction.

5. Venue is proper under 28 U.S.C. § 1391, in that each of the actions

2

complained of occurred within the Middle District of Tennessee.

## III.
## Parties

6. Mario M. Mitchell is an adult citizen and resident of Nashville, Davidson County, Tennessee.

7. John Drake is an adult citizen and resident of Nashville, Davidson County, Tennessee. He is sued in his individual and official capacities as the Chief of Police for the Metropolitan Government of Nashville and Davidson County, Tennessee. He may be served with process at 600 Murfreesboro Pike, Nashville, Tennessee 37210.

8. Watechia Lawless Mitchell is an adult citizen and resident of Nashville, Davidson County, Tennessee. She may be served with process at 3109 Lincoln Avenue, Nashville, TN 37218.

9. Christopher Dickerson is an adult citizen and resident of Nashville, Davidson County, Tennessee. He is sued in his individual capacity. He may be served with process at 600 Murfreesboro Pike, Nashville, Tennessee 37210.

10. Michael Esposito is an adult citizen and resident of Nashville, Davidson County, Tennessee. He is sued in his individual capacity. He may be served with process at 600 Murfreesboro Pike, Nashville, Tennessee 37210.

## IV.

3

## Facts

11. In April of 2024, Mr. Mitchell discovered a series of text communications between his wife, Watechia Mitchell and Metro Chief of Police John Drake.

12. The text messages Mr. Mitchell discovered were on his cell phone emanated from a separate cell phone he had had loaned to his wife. The messages revealed the intimate details of Ms. Mitchell's romantic tryst with Chief John Drake, and contained invitations from Drake to Ms. Mitchell to engage in sexual relations.

13. At the time, Watechia Mitchell was an employee of the Mayor's Office and had recently been appointed by Mayor Freddie O'Connell to the position of Director of Child and Youth Initiatives.

14. Mr. Mitchell agreed, out of respect for his wife, not to publicly disclose the text messages or to make them part of the record in their pending divorce. Mr. Mitchell kept his word, and was granted a divorce by the Third Circuit Court of Davidson County on April 24, 2024.

15. In August of 2024, Ms. Mitchell disclosed to Police Chief John Drake that Mr. Mitchell knew of their relationship and possessed incriminating text messages confirming their affair.

16. Ms. Mitchell's revelation of this information to Police Chief Drake led to a private communication between the Plaintiff and Chief Drake in August of 2024,

through a third-party intermediary and police officer, whom the Plaintiff trusted in the department. Through this confidential communication, Chief Drake acknowledged his relationship with the Plaintiff's wife, and he assured Mr. Mitchell that if he would agree not publicly disclose the relationship, then he (Chief Drake) would not retaliate against him.

17. Plaintiff later learned that Police Chief Drake recommended to Watechia Mitchell that she delete the text messages. He further advised Ms. Mitchell that if the Plaintiff threatened to disclose them, then she should pursue an Order of Protection against him and cite stalking as the pretextual grounds for such relief.

18. At the time Police Chief Drake devised this plan he was keenly aware that Mr. Mitchell was still on probation from a two decade-old criminal conviction, and that if he was cited with a criminal violation such as stalking this could lead to his further arrest for probation violation.

19. Rather than proceed with Police Chief Drake's recommendation, Ms. Lawless elected instead to try and reconcile with Mr. Mitchell. She admitted to him her affair with Chief Drake and, for a time, sought to renew a relationship with Mr. Mitchell.

20. Tensions eventually developed between Mr. Mitchell and Ms. Mitchell when she failed or refused to comply with the terms of their Marital Dissolution Agreement or to transfer her ownership interest in certain properties. These

5

tensions led to renewed discussions of Ms. Mitchell's prior involvement with Police Chief Drake.

21. In March of 2025, Mr. Mitchell spoke again with his ex-wife about the details of her affair with Police Chief Drake. He cautioned her that due to the pending post-divorce proceedings, there was a possibility that the details of their affair could become public. The Plaintiff alleges, upon information and belief, that Ms. Mitchell conveyed the details of this conversation to Chief Drake. Shortly following his conversation with Ms. Mitchell, the Plaintiff sent a text message to both Watechia Mitchell and John Drake containing irrefutable evidence of their romantic relationship. Chief Drake responded to the Plaintiff's text stating that he had "kept his end of the bargain" and that he had "kept his promise."

22. On or about April 1, 2025, Ms. Mitchell asked Mr. Mitchell to meet her at a Tesla charging station in a parking garage on 11th Avenue North in Nashville, Tennessee. Plaintiff did as requested.

23. During the meeting, Mr. Mitchell again beseeched Ms. Mitchell to simply comply with her obligations under the MDA so the parties could put the matter to rest. His request was met with threats by Ms. Mitchell who warned that if Mr. Mitchell sought to enforce the MDA, she would have him arrested on an Order of Protection stating: *"I will have you locked up and you will never be able to tell it"* (referring to the evidence of her affair with Police Chief Drake).

6

24. Ms. Mitchell made good on her threats. Acting on Chief Drake's earlier advice, she filed for an Order of Protection against Mr. Mitchell falsely claiming that he was guilty of stalking and harassing her.

25. In the meantime, on or about April 2, 2025, the Mayor's Office initiated an internal investigation into allegations that Police Chief Drake had engaged in sexual relations with Watechia Mitchell during work hours. The Mayor's Office became aware during this investigation of the Plaintiff's possession of certain text messages confirming their romantic relationship.

26. On April 5, 2025, while on a business trip in Raleigh, North Carolina, Mr. Mitchell was arrested on a fugitive warrant. He posted bond and was released later that day.

27. Plaintiff was advised by North Carolina special agents that his cell phone had been tracked while traveling to Raleigh, North Carolina, back to an address associated with Police Chief John Drake.

28. On April 6, 2025, Mr. Mitchell notified his probation officer, Jessica Mannion, of his arrest and discussed a safety plan based on the individuals involved. Mr. Mitchell advised Ms. Mannion of his plan to return to Nashville, Tennessee on April 9, 2025, and to voluntarily surrender himself on the Order of Protection. The Plaintiff also activated a new cell phone using the same iCloud account and telephone number.

29. On April 7, 2025, Mr. Mitchell appeared before the Wake County District Court in Raleigh, North Carolina. The Court refused to extradite Mr. Mitchell back to Nashville, Tennessee on a domestic warrant, and chose not to get involved.

30. While enroute back to Nashville, Tennessee, Mr. Mitchell noticed that he was being followed by unmarked vehicles. He was stopped on Interstate 40 west by an officer with the Tennessee State Highway Patrol on suspicion of an alleged window tint violation. When he pulled over, he was placed under arrest by two Metro Police Officers who also seized possession of his personal cell phone. Plaintiff alleges that at the time, the Metro officers involved in his arrest and unlawful seizure were acting outside of their lawful jurisdiction.

31. While being transported back to Nashville, the Metro officers questioned Mr. Mitchell, asking who knew about his ex-wife's affair with Police Chief John Drake. Mr. Mitchell responded that several individuals, including his probation officer, Jessica Mannion, were aware of this relationship. The officers admitted that up to that point the MNPD had been unsuccessful in accessing his cell phone.

32. On April 9, 2025, Mr. Mitchell was detained at the East Precinct of the Metro Police Department located at 936 E. Trinity Lane, Nashville, Tennessee. There he was interrogated for approximately nine hours about his knowledge of the romantic relationship between Police Chief John Drake and his ex-wife. Both of his cell phones were then seized and subjected to a full data extraction. During

this extraction, attempts were made to delete all texts or data related to Police Chief Drake's romantic involvement with Watechia Mitchell.

33. At one point during this interrogation, Mr. Mitchell's probation officer, Jessica Mannion, was brought in for questioning. Her state-issued cell phone was also seized and searched. During this search, text messages between Mr. Mitchell and his probation officer which incriminated Chief Drake were intentionally deleted. Data from this device was also extracted and reviewed.

34. On or about April 10, 2025, Metro officers filed a probation violation warrant against Mr. Mitchell. Plaintiff alleges that this action was taken at the direction, and/or under the supervision and approval of Police Chief John Drake.

35. The Plaintiff was arrested on the probation violation warrant and detained in custody until he was released on April 14, 2025.

36. On April 30, 2025, Watechia Mitchell filed a second Order of Protection against the Plaintiff, resulting in his arrest a third time while traveling on Briley Parkway in Nashville, Tennessee.

37. A hearing was conducted on May 5, 2025, on the Order of Protection before Special Master Dana Ballinger. During this hearing, Ms. Mitchell falsely testified that Mr. Mitchell had hacked into her phone, tracking her vehicle and harassing her on social media. Based in part on this false testimony, the Court

imposed an Order of Protection for one year. As a consequence of this finding, the Plaintiff was sentenced to serve ten days on the probation violation warrant.

38. In addition, on two separate occasions, the Defendant Watechia Mitchell filed frivolous charges of violations of the Orders of Protection against Mario Mitchell (Case No. GS1077048) and (Case No. GS1070097). These false charges were made without probable cause and were dismissed in Plaintiff's favor on May 7, 2025 and September 23, 2025, respectively. As a consequence of these false charges, the Plaintiff was nonetheless arrested and charged with violation of his probation resulting in further incarceration.

39. Following his release from jail, and in consultation with legal counsel, on May 17, 2025, Mr. Mitchell decided to create an Internet website on which he posted his version of the events described above.

40. When these facts became public, Watechia Mitchell, communicating through a mutual contact, demanded that the Plaintiff take down the website.

41. When Mr. Mitchell refused, he was summoned to the Metro police headquarters on May 26, 2025. There he was advised by Captain Christopher Dickerson and Detective Michael Esposito to remove the website and to avoid any contact with the news media concerning any accusations involving Police Chief John Drake.

42. Captain Dickerson threatened Mr. Mitchell that his failure to take down the website or speaking with the media would result in unspecified consequences.

43. Detective Esposito was more pointed in his threat against the Plaintiff. He warned Mr. Mitchell that if he did not take down the website, he would be arrested and "would not see the streets for a very long time."

44. Plaintiff alleges that these threats were carried out at the direction, supervision and approval of John Drake, acting in his capacity as the Chief of Police, in an attempt to muzzle the Plaintiff and to retaliate against him on the basis of his exercise of protected free speech rights under the First Amendment of the United States Constitution.

45. During this timeframe in May of 2025, the Metro Nashville Police Department and the Mayor's Office released public statements attacking the Plaintiff and accusing him of fabricating the entire story of Chief John Drake's romantic involvement with his wife. Plaintiff alleges that these releases were intended to undermine the Plaintiff's credibility and to discredit him in the public eye.

**V.**

**Causes of Action**

**COUNT I**
**42 U.S.C. § 1983**
**Violation of Plaintiff's Free Speech Rights As Guaranteed Under The First Amendment of the United States Constitution**

**Defendants John Drake, Christopher Dickerson and Michael Esposito**

46. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, and does further allege as follows.

47. At all times relevant, the Defendant John Drake was acting under color of state law and as a policy maker as the Chief of Police for Metro.

48. Defendant John Drake was, at all times relevant, the highest-ranking official within the Metropolitan Nashville Police Department with final authority to effect or authorize arrests.

49. As a private citizen, the Plaintiff's speech regarding an inappropriate romantic relationship between a Chief of Police and an employee of the Mayor's Office was entitled to protection under the free speech clause of the First Amendment.

50. The actions of Defendants Chief John Drake, Christopher Dickerson and Michael Esposito, as described herein, were undertaken in a careless and reckless disregard and with deliberate indifference to the Plaintiff's clearly established constitutional rights under the First Amendment.

12

51. These Defendants' actions further constitute retaliation against the Plaintiff based on his exercise of free speech as protected under the First Amendment.

52. As a direct and proximate result of the Defendants' actions as described herein, the Plaintiff suffered a deprivation of his rights of free speech, mental anguish, humiliation, embarrassment, injury to reputation and emotional injury for which he is entitled to an award of compensatory damages.

53. The Plaintiff further alleges that the actions of Defendants John Drake, Christopher Dickerson and Michael Esposito were undertaken intentionally, maliciously, recklessly and with callous disregard for Plaintiffs' rights and welfare, entitling Plaintiff to punitive damages.

**COUNT II**
**42 U.S.C. § 1983**
**Violation of Plaintiff's Free Speech Rights As Guaranteed Under The Fourth Amendment of the United States Constitution**

**Defendant John Drake**

54. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, and does further allege as follows.

55. The decision to seize and search the Plaintiff's personal cell phones was carried out at the direction, approval and instruction of Defendant Chief of Police John Drake.

56. This search and seizure was conducted in careless and reckless disregard and with deliberate indifference to the Plaintiff's clearly established constitutional rights under the Fourth Amendment to be free from unlawful searches or seizures of his property.

57. As a direct and proximate result of the Defendant's actions as described herein, the Plaintiff suffered a deprivation of his rights to be free and secure in his person and property from unreasonable searches and seizures and suffered mental anguish, humiliation, embarrassment, and emotional injury for which he is entitled to an award of compensatory damages.

58. The Plaintiff further alleges that the actions of Defendant John Drake, in ordering or approving of this unlawful search was undertaken intentionally, maliciously, recklessly and with callous disregard for Plaintiffs' rights and welfare, entitling Plaintiff to punitive damages.

## COUNT III
### Malicious Prosecution

### Defendant Watechia Mitchell

59. Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, and does further allege as follows.

60. The warrants issued by the Defendant Watechia Mitchell against the Plaintiff (Case Nos. GS1077048 and GS 1070097) for alleged violation of the Orders

of Protection were false and maliciously and without probable cause.  Both of these criminal charges were later resolved in favor of the Plaintiff.

61.   As a direct and proximate result of these malicious charges, the Plaintiff suffered damages in the form of attorney's fees, incarceration, mental anguish, embarrassment, humiliation and loss of enjoyment of life for which he is entitled to an award of both compensatory and punitive damages.

## COUNT IV
### Violation of Plaintiff's Rights Under The Due Process Clause of the Fourteenth Amendment of the United States Constitution

### Defendant John Drake

62.   Plaintiff incorporates by reference herein the allegations contained in the preceding paragraphs, and does further allege as follows.

63.   The Defendant John Drake, acting under color of state law, and in his capacity as the Chief of Police for the Metropolitan Government of Nashville and Davidson County, Tennessee, in ordering, supervising, approving and overseeing the arrest of the Plaintiff on April 9, 2025, was conducted without probable cause and in retaliation for the Plaintiff's exercise of his rights as a citizen and based on his lawful possession of information implicating this Defendant in an inappropriate romantic relationship with his wife.

64.   The Defendant carried out these actions in careless and reckless disregard and with deliberate indifference to the Plaintiff's clearly established

constitutional rights to substantive due process under the Fourteenth Amendment to be free from unlawful arrest.

65. As a direct and proximate result of the Defendant's actions as described herein, the Plaintiff suffered an infringement of his right to substantive due process, mental anguish, humiliation, embarrassment, injury to reputation and emotional injury for which he is entitled to an award of compensatory damages.

## Request for Relief

### *Nominal Damages*

1. Plaintiff seeks an order awarding nominal and constitutional damages for the Defendants' violation of his federal constitutional rights.

### *Compensatory Damages*

2. Plaintiff seeks an award of compensatory damages against the Defendants, as follows:

   a. Against the Defendant **John Drake** in the amount of Five Million Dollars;

   b. Against the Defendant **Christopher Dickerson** in the amount of Two Million Dollars;

   c. Against the Defendant **Michael Esposito** in the amount of Two Million Dollars;

16

d.  Against the Defendant **Watechia Mitchell** in the amount of One Million Dollars;

3.  Plaintiff seeks an award of punitive damages against the Defendants, as follows:

a.  Against the Defendant **John Drake** in the amount of Five Million Dollars;

b.  Against the Defendant **Christopher Dickerson** in the amount of Two Million Dollars;

c.  Against the Defendant **Michael Esposito** in the amount of Two Million Dollars;

d.  Against the Defendant **Watechia Mitchell** in an amount to be determined by the jury.

### *Attorney's Fees and Costs*

4.  Plaintiff seeks an order awarding the costs of this cause, including reasonable attorney's fees, costs and expenses under 42 U.S.C. § 1988.

### *Jury Demand*

5.  Plaintiff demands a jury of six to hear and try this case.

### *Other Relief*

6.  Plaintiff additionally requests such other relief as the Court deems just and proper.

THIS IS THE 6th DAY OF APRIL 2026.

Respectfully submitted,

**CRAIN LAW GROUP, PLLC**

By:

*/s/ Larry L. Crain*

Larry L. Crain, Tenn.Sup. Crt. # 9040
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN  37027
(615) 376-2600
Larry@Crainlaw.legal

Emily A. Castro
Tn. Sup. Crt. No. 28203
5214 Maryland Way
Suite 402
Brentwood, TN 37027
Tel. 615-376-2600
Fax. 615-345-6009
Email: Emily@crainlaw.legal

*Attorneys for the Plaintiff*