| | | |
|---|---|---|
| MARIO M. MITCHELL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 3:26-cv-00407 |
| | ) | |
| JOHN DRAKE, in his official capacity as the | ) | DISTRICT JUDGE RICHARDSON |
| Chief of Police for the Metropolitan | ) | |
| Government of Nashville and Davidson | ) | MAGISTRATE JUDGE FRENSLEY |
| County, Tennessee, as well as his individual | ) | |
| capacity; WATECHIA LAWLESS | ) | JURY DEMAND |
| MITCHELL; CHRISTOPHER DICKERSON, | ) | |
| in his individual capacity; and MICHAEL | ) | |
| ESPOSITO, in his individual capacity; | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT WATECHIA LAWLESS MITCHELL'S MOTION TO DISMISS

Defendant Watechia Lawless Mitchell ("Lawless"), by and through counsel, moves to

dismiss the Complaint for lack of supplemental jurisdiction and for failure to state a claim upon

which relief may be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

respectively.

### FACTS[1]

Plaintiff Mario M. Mitchell ("Mitchell") initiated an irreconcilable differences divorce

against his then-wife, Lawless, on August 2, 2023. *See Mario M. Mitchell v. Watechia Lawless*

*Mitchell*, Davidson County Case No. 23D1056. Mitchell and Lawless filed a Marital Dissolution

---

[1] Lawless submits this factual background for the limited purpose of this Motion to Dismiss based on the allegations of the Complaint, public records that are subject to judicial notice, and reasonable inferences to be drawn from the Complaint. *See, e.g.*, *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Lawless does not admit or concede the truthfulness of any of the averments in the Complaint.

Agreement on March 20, 2024, which was later amended. *Id.* The Third Circuit of Davidson County entered a final divorce decree on April 24, 2024. (*See* Doc. No. 1, ¶ 14). Post-decree proceedings remain pending in the divorce case as of July 2026.

Mitchell alleges that, on an unidentified date in April 2024, he discovered that Lawless—against whom he had filed a divorce complaint around eight (8) months prior—had begun a romantic relationship with Metro Chief of Police John Drake. (Doc. No. 1, ¶ 11). Mitchell avers that he and his ex-wife subsequently attempted to reconcile, but "[t]ensions eventually developed" over the "transfer" of Lawless's "ownership interest in certain properties." (*Id.*, ¶¶ 19–20). According to Mitchell, "[t]hese tensions led to renewed discussions of [Lawless's] prior involvement with Police Chief Drake." (*Id.*, ¶ 20).

In March 2025, Mitchell and Lawless "spoke again" about "the details of her [purported] affair" with Drake.[2] (*Id.*, ¶ 21). Mitchell says that, at this point, he "cautioned" Lawless of the "possibility that the details of their [purported] affair could become public."[3] (*Id.*).

In or around April 2025, Lawless obtained an Order of Protection against Mitchell on allegations that Mitchell "was guilty of stalking and harassing her." (*Id.*, ¶ 24). Mitchell maintains that Lawless's allegation was "false[ ]," but the Order of Protection was entered nonetheless. (*Cf. id.*) Mitchell states that, around that same time, on or about April 2, 2025, Lawless's employer—

---

[2] Although Mitchell repeatedly characterizes the relationship between his ex-wife and Drake as an "affair," this characterization disregards the fact of Mitchell's and Lawless's divorce—as does Mitchell's insistence on identifying his ex-wife by her married name despite his knowledge that she changed her surname to her maiden name on June 24, 2025. *See In the Name Change of: Watechia Lawless Mitchell*, Davidson County Circuit Court (Probate Division), Case No. 25P1124.

[3] Perhaps Mitchell expects this Court to infer that Mitchell altruistically "cautioned" his ex-wife about this "possibility." However, the fact that Mitchell, by his own admission, followed up this conversation by texting Lawless and Drake "irrefutable proof of their romantic relationship" certainly gives rise to the inference of an ulterior, less charitable motive. (Doc. No. 1, ¶ 21).

2

the Nashville Mayor's Office—"became aware [ . . . ] of [Mitchell's] possession of certain text messages confirming [Lawless's and Drake's] romantic relationship." (*Id.*, ¶ 25).

A few days later, on April 5, 2025, Mitchell was arrested in North Carolina on a fugitive warrant. (*Id.*, ¶ 26). Mitchell decided to "voluntarily surrender himself on the Order of Protection." (*Id.*, ¶ 28). Enroute to Nashville, the Tennessee State Highway Patrol stopped Mitchell "on suspicion of an alleged window tint violation." (*Id.*, ¶ 30). Two unidentified Metro Police Officers arrested Mitchell and confiscated his personal cell phone. (*Id.*). This arrest appears to have occurred on April 9, 2025. (*Id.*, ¶¶ 28–32). Mitchell alleges that Metro police subsequently interrogated Mitchell about the relationship between Lawless and Drake for nine (9) hours, extracted all of the data from his personal cell phone, and attempted to delete all texts and data related to the relationship between Drake and Lawless.[4] (*Id.*, ¶¶ 31–32). On April 10, 2025, Metro filed a probation violation warrant against Mitchell. (*Id.*, ¶ 34).

On April 30, 2025, Lawless filed a second Order of Protection against Mitchell. (*Id.*, ¶ 36). Mitchell avers that this resulted in his being arrested a third time. (*Id.*). On May 5, 2025, Davidson County Third and Fourth Circuit Order of Protections Special Master Dana Ballinger held a hearing on Lawless's requested Order of Protection. (*Id.*, ¶ 37). While Mitchell avers that Lawless "*falsely* testified that Mr. Mitchell had hacked into her phone, track[ed] her vehicle and harass[ed] her on social media," the Special Master appears to have found this testimony credible, as Mitchell alleges that the Special Master imposed a one-year Order of Protection against Mitchell. (*Id.*, ¶ 37 (emphasis added)). "As a consequence of this finding, [Mitchell] was sentenced to serve ten days on the probation violation warrant." (*Id.*).

---

[4] Mitchell further alleges that Metro police also questioned his probation officer, Jessica Mannion, and seized and searched her cell phone, but Mannion is not a party to this litigation. (Doc. No. 1, ¶ 33).

111626908v3

Mitchell alleges that Lawless also filed two "frivolous" charges of violations of the Orders of Protection against him in Davidson County Case Nos. GS1077048 and GS1070097. (*Id.* ¶¶ 38, 60–61). It is these charges that give rise to Mitchell's claim against Lawless. (*Cf. id.*). Notwithstanding Mitchell's claim that these two charges were "dismissed in [his] favor on May 7, 2025 and September 23, 2025[,]" Mitchell avers that he was "nonetheless arrested and charged with violation of his probation resulting in further incarceration" as a "consequence" of these two charges. (*Id.*, ¶ 38).

After his release from jail, on May 17, 2025, Mitchell "decided to create an Internet website on which he posted his version of the events described above." (*Id.*, ¶ 39). Mitchell's Complaint does not elaborate upon his motivation for deciding to make such a website about his ex-wife's relationship with a public figure, nor does Mitchell's Complaint reconcile with whether his making such a website violated any of the Orders of Protection entered against him. Lawless, reasonably, "demanded" that Mitchell "take down the website." (*Id.*, ¶ 40).

Mitchell alleges that on May 26, 2025, "he was summoned to the Metro police headquarters" and "advised by Captain Christopher Dickerson and Detective Michael Espositio to remove the website and to avoid any contact with the news media concerning [his] accusations." (*Id.*, ¶ 41). Mitchell further alleges that Dickerson threatened him with "unspecified consequences," while Esposito threatened him with arrest. (*Id.*, ¶¶ 42–43). Mitchell alleges that Drake, in his capacity as Chief Police and under color of law, masterminded these alleged threats. (*Id.*, ¶ 44). The Metro Nashville Police Department and the Mayor's Office subsequently "released public statements" which "accus[ed] Mitchell of fabricating" his account. (*Id.*, ¶ 45).

## PROCEDURAL HISTORY

On April 6, 2026, Mitchell brought this lawsuit against Drake, Lawless, Dickerson, and Esposito. (Doc. No. 1). Mitchell's Count I claim against Drake, Dickerson, and Esposito and his

4

Count II and IV claims against Drake allege constitutional violations under 42 U.S.C. § 1983. (*Id.*, ¶¶ 46–53 (Count I), ¶¶ 54–58 (Count II), and ¶¶ 62–65 (Count IV)). Mitchell's Count III claim alleges that Lawless maliciously prosecuted Mitchell in violation of Tennessee state law when she brought Davidson County Case Nos. GS1077048 and GS1070097 against him. (*Id.*, ¶¶ 59–61).

Mitchell contends that this Court has federal question jurisdiction over his 42 U.S.C. § 1983 claims against Drake, Dickerson, and Esposito under 28 U.S.C. § 1331 and that this Court has supplemental jurisdiction over his state law malicious prosecution claim against Lawless under 28 U.S.C. § 1367. (*Id.*, ¶ 3).

Lawless now moves to dismiss for lack of supplemental jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.

## LAW & ARGUMENT

**I.     The Complaint Should be Dismissed for Lack of Supplemental Jurisdiction Over the State Law Claim Against Lawless.**

**A.     *Standards of Law.***

**1.     Federal Rule of Civil Procedure 12(b)(1).**

Lawless moves to dismiss Mitchell's Count III malicious prosecution claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 820 (M.D. Tenn. 2018) (citing *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis." *Id.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). On the other hand, "[a] factual attack challenges the factual

111626908v3

existence of subject matter jurisdiction." *Id.* "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* Under either standard, the plaintiff—here, Mitchell—"bears the burden of establishing that subject matter jurisdiction exists." *Id.* (citing *DLX, Inc. v. Commonwealth of Ky.*, 381 F.3d 511, 516 (6th Cir. 2004)).

Here, Lawless raises a facial challenge to subject matter jurisdiction based on the pleadings. While "the issue [of] whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation[,]" "[t]he question of [a district court's] power [to exercise supplemental jurisdiction] will ordinarily be resolved on the pleadings."[5] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966). Lawless therefore limits her argument in this Motion to the allegations of the Complaint and assumes them to be true for the limited purposes of this Motion, while reserving her right to raise a factual attack upon obtaining more information regarding Mitchell's claims.

---

[5] While Lawless maintains that the dismissal of Mitchell's claims can and should be decided now, at the pleadings stage, Lawless reserves the right to revisit this issue in the future. *See, e.g.*, *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (quoting *Gibbs*, 383 U.S. at 727) ("Even after a jury trial, 'dismissal of the state claim might … be merited.'"). For example, should the police officer Defendants obtain a dismissal of the federal question claims, Lawless would be entitled to revisit supplemental jurisdiction, as "[t]here is a general presumption that dismissal of all federal claims should result in declining to retain supplemental jurisdiction over pendent state claims." *Darrin T. Ring v. Humphreys Cty., Tenn.*, No. 3:12-0016, 2014 WL 1287171, at *4 (M.D. Tenn. Mar. 31, 2014); *see also Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

111626908v3

### 2. Subject Matter Jurisdiction.

"Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). "[F]ederal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to satisfy themselves that jurisdiction to entertain an action exists." *Campanella v. Com. Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998) (citations omitted). "This duty applies irrespective of the parties' failure to raise a jurisdictional challenge on their own, and if jurisdiction is lacking, dismissal is mandatory." *Id.* (citing Fed. R. Civ. P. 12(h)(3)). "[S]ubject-matter jurisdiction reaches beyond efficiency concerns to the foundations of our constitutional structure: the separation of powers between the federal government and the states." *Kubala v. Smith*, 984 F.3d 1132, 1138 (6th Cir. 2021). Courts "may not, and must not, hear a case over which [they] have no power." *Id.*

### 3. Supplemental Jurisdiction.

"Supplemental jurisdiction is a species of 'subject-matter jurisdiction over specified state-law claims, which [a federal court] may (or may not) choose to exercise.'" *Rodriguez v. Velez-Pagan*, 341 F. Supp. 3d 203, 212–13 (E.D.N.Y. 2018), *aff'd sub nom. Rodriguez v. United States Army*, 788 F. App'x 67 (2d Cir. 2019) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 129 S. Ct. 1862, 1866, 173 L. Ed. 2d 843 (2009)). Federal district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution […] includ[ing] claims that involve the joinder or intervention of additional parties."[6] 28 U.S.C. § 1367(a). When Congress enacted § 1367 in 1990, it largely "codified" the

---

[6] Except where original federal jurisdiction arises "solely" from diversity under 28 U.S.C.A. § 1332, which is not the case here. *Cf.* 28 U.S.C. § 1367(b).

111626908v3

principles set forth in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). *See Lee v. Vanderbilt Univ.*, No. 3:20-CV-00924, 2023 WL 8654907, at *4 (M.D. Tenn. Dec. 14, 2023).

To constitute one singular case and/or controversy for purposes of supplemental jurisdiction under § 1367, the relevant "state and federal claims must derive from a common nucleus of operative fact." *Gibbs*, 383 U.S. at 725; *see also Ammons*, 305 F. Supp. 3d at 821 (citing *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002)).

> **B.      Analysis.**
>
>> **1.      This Court does not have supplemental jurisdiction over Mitchell's state law claim against Lawless because it does not share a common nucleus of operative fact with Mitchell's federal question claims.**
>>
>>> **(i)      <u>Mitchell's state law claim against Lawless and Mitchell's federal question claims do not share the same common nucleus of operative fact because the claims concern separate incidents by different actors on different dates.</u>**

"Where the Supreme Court has found 'a common nucleus of operative fact,' the factual connection between the state and federal claims most often involve the same incident." *Kubala*, 984 F.3d at 1137; *see, e.g.*, *Moor v. Cty of Alameda*, 411 U.S. 693, 695, 711-12 (1973) (finding a common nucleus of operative fact where plaintiffs' state and federal claims arose from a deputy sheriff injuring them when responding to the same civil disturbance).

The Sixth Circuit's decision in *Kubala v. Smith* is instructive on this point. *See generally Kubala*, 984 F.3d 1132. In that case, the plaintiff, Kubala, had been employed by an Ohio county engineer's office. *Id.* at 1135. Kubala's employer was a governmental entity, and his manager— the defendant Smith—held an elected position. *Id.* Kubala sued Smith for creating a hostile work environment in violation of Ohio state law; specifically, Kubala alleged that, over the span of four years, Smith subjected Kubala to repeated, unrelenting cruel words and gestures, in private and in public, "implying that Kubala [was] gay." *Id.* at 1135–36. Kubala also claimed that Smith, as a

8

governmental actor, violated Kubala's First Amendment rights under 42 U.S.C. § 1983 by threatening Kubala with an allegedly adverse employment action to put an end to Kubala's attendance at political functions and to thwart Kubala's campaign for a political office held by Smith's wife. *Id.* at 1136. On these facts, the Sixth Circuit found that the district court could *not* exercise supplemental jurisdiction because Kubala's Ohio state law sexual harassment claim and his federal § 1983 claim did not share a common nucleus of operative fact:

> Kubala's sexual harassment-claim is based on Ohio Revised Code § 4112 alone, not federal law. Although Kubala claims the sexual harassment and First Amendment retaliation were both inflicted by Smith, Kubala's state and federal claims do not share "a common nucleus of operative fact," [ . . . ] or indeed any fact other than his employment status. There is no "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state law claims." [ . . . ] Kubala alleges that Smith violated his First Amendment rights in July 2017 and twice in February 2018 through conversations with Smith and attorney Matt Blair. Kubala does not claim that any sexual harassment was related to those conversations. Nor does he allege that the First Amendment retaliation was motivated by Smith's interest in his sexuality. Kubala alleges that the retaliation was motivated by competing interests in local politics but that "Smith's sexually inappropriate conduct was the overriding factor in [his] decision to resign from his job." [ . . . ] Not once does Kubala allege that his conversation with Blair or a fear of retaliation was a reason for quitting.

*Id.* at 1139 (quoting *Gibbs*, 383 U.S. at 725 and *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986)). Thus, the *Kubala* court found that "Kubala's sexual-harassment and First Amendment claims share[d] no operative facts because no harassment occurred *during* the alleged First Amendment violations." *Id.* (emphasis added). The sexual harassment and First Amendment violations did not arise from the "same incident." *Cf. id.* at 1137. Thus, the Sixth Circuit concluded that "the district court had no jurisdiction to hear Kubala's state sexual-harassment claim" even though the claims were against the *same actor* and were part of the same employer's pattern of mistreatment of his employee. *Id.* at 1139.

9

Here, while Mitchell's claims, taken as true, arguably arise out of the same purported love triangle saga as alleged by Mitchell, the *operative* facts as alleged by Mitchell involve separate and independent incidents which occurred on different dates and involve different actors.

Mitchell's sole claim against Lawless is his Count III claim for malicious prosecution, in which Mitchell alleges that Lawless "filed frivolous charges of violations of the Orders of Protection" in Davidson County Case Nos. GS1077048 and GS1070097, which were allegedly "dismissed in Plaintiff's favor on May 7, 2025 and September 23, 2025[.]" (Doc. No. 1, ¶¶ 38, 60–61 (Count III)). Conversely, Mitchell's claims against the police officer Defendants all concern liability for alleged governmental actor constitutional violations under 42 U.S.C.A. § 1983.

Mitchell's Count I alleges that on May 26, 2025, Dickerson and Esposito threatened Mitchell that he would suffer "unspecified consequences" and/or "be arrested" and "not see the streets for a very long time" if he did not take down an "Internet website on which he posted his version of the events" concerning the relationship between Drake and Lawless. (Doc. No. 1, ¶¶ 39–43, 47–51 (Count I)). Mitchell further alleges that Dickerson and Esposito's "threats were carried out at the direction, supervision, and approval of [Defendant] Drake, acting in his capacity as the Chief of Police" and "under color of state law." (*Id.*, ¶¶ 44, 47–48). On these facts, Mitchell alleges that the police officer Defendants are liable under 42 U.S.C. § 1983 for their "careless and reckless disregard" for, "deliberate indifference to," or "retaliation against" Mitchell's protected "exercise of free speech as protected under the First Amendment." (*Id.*, ¶¶ 50–51).

111626908v3

Mitchell's Count II alleges that, on April 9, 2025, Drake violated his freedom from unreasonable search and seizure under the Fourth Amendment when police officers seized and searched his personal cell phone.[7] (Doc. No. 1, ¶¶ 30, 32, 55–58 (Count II)).

Lastly, Mitchell's Count IV alleges that, on April 9, 2025, Drake violated his right to due process "in ordering, supervising, approving and overseeing [his] arrest […] without probable cause and in retaliation for [his] exercise of his rights as a citizen[,] and based on his lawful possession of information implicating [Drake] in an inappropriate romantic relationship with his [ex-]wife." (*Id.*, ¶ 63).

Mitchell does not plead facts showing that any of his § 1983 claims against the police officer Defendants concern the same acts, omissions, or incidents as Mitchell's malicious prosecution claim against Lawless.

Other than her being the subject of Mitchell's conspiratorial internet ramblings and asking him to "take down" a public website about her private romantic relationships (*cf. id.*, ¶ 40), Mitchell pleads no factual connection, let alone an operative factual connection, between Lawless and Mitchell's First Amendment claim against the police officer Defendants. Lawless is not a police officer herself. She did not personally threaten to arrest Mitchell on May 26, 2025. Mitchell does not allege that Lawless had any *de facto* or *de jure* authority to order the officers to make the alleged threats. As a private citizen, she necessarily did not act under color of law.[8] Mitchell pleads

---

[7] Mitchell styled Count II as a violation of his "*Free Speech* Rights As Guaranteed Under The Fourth Amendment," but this appears to be a typographical error. (Doc. No. 1, PageID # 13 (emphasis added)).

[8] Mitchell avers that Lawless "was employed in the Mayor's Office" in or around April 2024, having been appointed to the position of Director of Child and Youth Initiatives, but he does not allege that she ever engaged in any act or omission relevant to the Complaint in her official capacity, much less under color of law. (Doc. No. 1, ¶¶ 1, 13). *See also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (noting that "§ 1983 excludes from its reach merely private

111626908v3

no facts linking his malicious prosecution claim against Lawless to the threats allegedly made by the police officer Defendants on May 26, 2026. In fact, one of Lawless's charges related to Mitchell's malicious prosecution claim necessarily predates the events of May 26, 2025 altogether, because Mitchell alleges that the charge had already been dismissed by May 7, 2025. (*Id.*, ¶ 38.). Even assuming *arguendo* that Lawless's other Order of Protection violation charge *had* concerned Mitchell's website—which Mitchell's Complaint does *not* allege—the claims against the police officer Defendants relate to purported extrajudicial threats, while the claim against Lawless relates to the filing of a charge. It would still not be a common operative fact, merely an incidental common fact.

Similarly, the Complaint is entirely devoid of any factual connective tissue between the malicious prosecution claims relating to the Order of Protection and Mitchell's Count II and IV Fourth Amendment claims. The Complaint avers that the search of Mitchell's phone occurred after he was "placed under arrest by two Metro Police Officers" subsequent to a traffic stop "on Interstate 40 west by the Tennessee State Highway Patrol on suspicion of an alleged window tint violation." (*Id.*, ¶ 30.) Mitchell does not allege that Lawless is a Metro Police Officer or member of the Tennessee State Highway Patrol. Lawless is not alleged to have participated in the search of Mitchell's cell phone or orchestrated his April 9, 2025 arrest. Mitchell does not assert that Lawless somehow brought about his traffic stop by the Tennessee State Highway Patrol for a window tint violation or otherwise instituted any proceeding related to the search of his cell phone. Mitchell does not allege that the Tennessee State Highway Patrol lacked probable cause to stop him for the window tint violation. While Mitchell does allege that the Metro police officers arrested him

---

conduct, no matter how discriminatory or wrongful") (citations and internal quotation marks omitted).

"without probable cause," Mitchell does not allege that Lawless instituted any proceeding related to that arrest or that any proceeding related to the April 9, 2025 arrest terminated in his favor; to wit, Mitchell has not brought any claim against any of the police officer Defendants for malicious prosecution related to the April 9, 2025 arrest.

Simply put, Mitchell does not allege any facts connecting Lawless's filing of charges related to Order of Protection violations in Case Nos. GS1077048 and GS1070097 and Mitchell's April 9, 2025 arrest by Metro Nashville police officers or the threats alleged to have been made by Dickerson and Esposito on May 26, 2025. Accordingly, Mitchell does not allege facts plausibly showing that his Count I First Amendment and Count III malicious prosecution claims "involve the same incident" so as to concern the same common nucleus of operative facts. *Cf. Kubala*, 984 F.3d at 1137.

**(ii)**     <u>**Mitchell's state law claim against Lawless and Mitchell's federal question claims do not share the same common nucleus of operative fact because the claims do not share any overlapping elements.**</u>

More importantly, Mitchell's malicious prosecution and § 1983 claims rise or fall based on proof of different elements. Claims "do not share a common nucleus of operative fact" when the resolution of the claims on the merits turn on separate elements and require proof of "evidence that is chronologically separate and unique to each cause of action." *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 823 (M.D. Tenn. 2018); *see also Kubala*, 984 F.3d at 1138 (quoting *Cleveland Press*, 787 F.2d at 1055) (finding no common nucleus of operative fact in the absence of any "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state law claims"). Federal courts, including this District, have distinguished between claims which share a "superficial or tangential relation" merely by virtue of arising from the parties' past history generally versus those claims which actually arise from the same operative facts relevant to

13

proving the specific claims at issue. *Ammons*, 305 F. Supp. 3d at 822 (quoting *Vecchia v. Ally Financial, Inc.*, No. 8:17:cv-2977-T-23AAS, 2018 WL 907045, at *1, (M. D. Fla. Feb. 15, 2018)).

This distinction has frequently been litigated in the context of creditors' state law counterclaims against consumers who have sued them under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). While the present case between Mitchell and Lawless does not involve any consumer protection claims, the analysis in this line of cases distinguishing between claims which at first appear interrelated but in reality bear only a "superficial or tangential relation" to one another is illustrative. *Cf. id.* For example, in *Ramsey v. Gen. Motors Fin. Co.*, the Middle District found that a consumer's federal TCPA claim did not share a common nucleus of operative facts with her creditor's state law counterclaim for breach of a retail installment contract. No. 3-15-0827, 2015 WL 6396000 (M.D. Tenn. Oct. 22, 2015). "Although [the consumer]'s claim, from a broad perspective, arose from the underlying debt upon which [the creditor] sue[d]," the operative facts of the two claims were "separate and different." *Id.* at *2. "The proof needed to establish [the creditor]'s violation of the TCPA (*e.g.,* calls made, without express consent, with an automatic telephone dialing system or an artificial or prerecorded voice) [was] different from the proof needed to establish [the consumer]'s breach of the [c]ontract (*e.g.,* existence of a valid contract, default, damages)." *Id.* Thus, the breach of contract claim did not arise out of the same case or controversy because "two separate factual inquiries [were] required to litigate the federal versus the state claims." *Id.* at *2 (dismissing the creditor's counterclaim without prejudice).

Similarly, in *Ammons v. Ally Fin., Inc.*, the Middle District likewise found that a creditor's counterclaim for fraudulent inducement under state law did not share operative facts with a consumer's TCPA claim because "two separate factual inquiries [were] required in order to litigate the federal claim versus the state law [c]ounterclaim." 305 F. Supp. 3d at 823. The *Ammons* court,

14

like the *Ramsey* court, compared and contrasted the elements at issue on a claim under the federal TCPA—*i.e.*, use of an automatic telephone dialing system or artificial or pre-recorded voice, to the consumer's cellular telephone, not made for emergency purposes, and without the consumer's prior express consent—with the disparate elements at issue under Tennessee's formulation of a fraudulent inducement claim—*i.e.*, the existence of a false statement of material fact, knowledge of falsity or utter disregard for its truth, intention to induce reliance, reasonable reliance, and resulting injury. *Id.* (citations omitted). The court concluded that there was no overlap between the two sets of elements, and that to succeed on either of their claims, "both parties would be required to allege facts and produce evidence that is chronologically separate and unique to each cause of action." *Id.* Neither the fact that "the TCPA claim would likely not have arisen in the absence of the original contract"—*cf. Ammons*, 305 F. Supp. 3d at 822 (quoting *Ginwright v. Exeter Fin. Corp.*, No. TDC-16-0565, 2016 WL 5867443, at *4 (D. Md. Oct. 6, 2016))—nor the fact that the creditor's "actions were undoubtedly driven by its desire to collect the underlying debt" would outweigh the fact that the claims turn on different elements. *Cf. id.* (quoting *Watkins v. Synchrony Bank*, No. 4:15-CV-00842, 2015 WL 5178134, at *5 (M.D. Pa. Sept. 4, 2015)). Thus, because the claims turned on separate and independent proof and the counterclaim on the loan had "a truly tangential relationship to [the consumer]'s TCPA action," the *Ammons* court did not have supplemental jurisdiction over the state law counterclaim. *Id.* (granting the consumer's motion to dismiss under Fed. R. C. P. 12(b)(1)).

The same is true here. "To succeed on [his] claim for malicious prosecution," Mitchell must prove (1) that Lawless "initiated a prior suit against [him] without probable cause," (2) that Lawless "brought the prior suit with malice," and (3) "that the prior suit was terminated in favor of" Mitchell on the merits. *Himmelfarb v. Allain* 380 S.W.3d 35, 38 (Tenn. 2012) (citing *Christian*

15

*v. Lapidus,* 833 S.W.2d 71, 73 (Tenn. 1992)). Conversely, to prevail on any of his § 1983 claims, Mitchell must show that the police officer Defendants (1) acted "under color of [a] statute, ordinance, regulation, custom, or usage, of any State or Territory" and (2) "subject[ed], or cause[d]" Mitchell "to be subjected [ . . . ] to the deprivation of [his] rights, privileges, or immunities secured by the Constitution[.]" 42 U.S.C. § 1983.

Accordingly, Mitchell's malicious prosecution claim against Lawless shares no elements with Mitchell's § 1983 claims against the police officer Defendants. The resolution of Mitchell's Count III claims on the one hand and Counts I, II, and IV on the other hand will turn on separate elements and "evidence that is chronologically separate and unique to each cause of action." *Ammons*, 305 F. Supp. 3d at 823. Mitchell's claims against Lawless will require separate, independent, and distinct proof, testimony, witnesses, and evidence. There is no "substantial similarity between the predicate factual findings necessary to the resolution of both the federal and state law claims." *Cf. Kubala*, 984 F.3d at 1138 (quoting *Cleveland Press*, 787 F.2d at 1055). Mitchell's claims against Lawless bear only a "superficial or tangential relation" to his constitutional claims against the police officer Defendants. *Ammons*, 305 F. Supp. 3d at 822 (citations omitted). It does not matter that the claims arise from some of the same underlying chain of events when viewed "from a broad perspective." *Cf. Ramsey*, 2015 WL 6396000, at *2. It does not matter whether Mitchell could show that his constitutional claims against the police officer Defendants "would likely not have arisen in the absence of" any events relating to Drake's relationship with Lawless." *Cf. Ammons*, 305 F. Supp. 3d at 822 (quoting *Ginwright*, 2016 WL 5867443, at *4). Nor does it matter whether any party's actions were "driven by" any motivations related to the other claims. *Id.* (quoting *Watkins*, 2015 WL 5178134, at *5). Rather, what matters is that the nonoverlapping elements of Mitchell's malicious prosecution claim and his

16

constitutional claims will require "two separate factual inquiries" and therefore "do not share a common nucleus of operative fact dependent on the other." *Id.* at 823.

For all of these reasons, the Court does not have supplemental jurisdiction over Mitchell's Count III claim for malicious prosecution against Lawless.

> **2.** **Even if the Court *could* find supplemental jurisdiction over Mitchell's state law malicious prosecution claim, the Court should nonetheless exercise its discretion to decline to do so.**

Supplemental jurisdiction "need not be exercised in every case in which it is found to exist"; it "is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim […] if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Therefore, § 1367 empowers district courts to "decline to exercise jurisdiction over pendent claims for a number of valid reasons" and "afford[s] flexibility 'to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values,'" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, the relationship between the state and federal claims, [ . . . ] judicial economy, convenience, fairness, and comity." *Lee v. Vanderbilt Univ.*, No. 3:20-CV-00924, 2023 WL 8654907, at *3–4 (M.D. Tenn. Dec. 14, 2023) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73, 118 S. Ct. 523, 533, 139 L. Ed. 2d 525 (1997)).

Here, Lawless asks that the Court decline to exercise supplemental jurisdiction under § 1367(c) *even if* the Court finds that the Complaint states facts sufficient to satisfy § 1367(a).

17

Tennessee state courts would be best suited to hear and decide Mitchell's state law claims. The courts of Davidson County, Tennessee are naturally better equipped to review the record of Davidson County Case Nos. GS1077048 and GS1070097 and answer the question of whether the claims actually were "dismissed in Plaintiff's favor" on the merits.[9] (Doc. No. 1, ¶¶ 38, 60–61). Mitchell's claims also likely implicate "novel" and/or "complex" issues of Tennessee law, including whether Lawless showed probable cause and whether the case can be said to have been terminated in his favor on the merits for reason of innocence. *Cf.* 28 U.S.C. § 1367(c)(1); *see infra* at 24. As recently as 2023, the Tennessee Supreme Court remarked that "significant guidance as to what qualifies as a favorable termination in the criminal context" was "notably absent from our jurisprudence," and that the Tennessee Supreme Court had "never directly addressed when the dismissal of criminal charges can constitute a favorable termination." *Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741, 749 (Tenn. 2023). While *Mynatt* endeavored to fill these gaps, the Court should decline to exercise supplemental jurisdiction when such crucial questions of state law have only recently been explored by the state courts.[10]

Dismissing Mitchell's claim would avoid unnecessary federal court decisions over state law, as Mitchell's claims not only implicate Tennessee case law on malicious prosecution, but also Tennessee law regarding the underlying charges in Case Nos. GS1077048 and GS1070097. *See Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

---

[9] This is particularly important in light of the fact that Mitchell appears to have had some or all of the charges brought by Lawless expunged, precluding Lawless from obtaining the relevant records.
[10] Nonetheless, Lawless submits that Mitchell's plain failure to plead the elements of a malicious prosecution claim in the criminal context warrants this Court dismissing his claim under Rule 12(b)(6). *See infra* at 24 (discussing *Mynatt*, 669 S.W.3d 741).

18

Mitchell would not be prejudiced by the dismissal of his state law claim without prejudice. All things being equal, Mitchell would not "ordinarily be expected to try" his claims against Mitchell and his claims against the governmental actors "in one judicial proceeding." *Cf. Gibbs*, 383 U.S. at 725. Mitchell's state law claim is not "closely tied to questions of federal policy" so as to warrant litigating the claims together. *Cf. id.* at 727. Nothing would prevent Mitchell from refiling in an appropriate forum.

Judicial economy does not favor combining Mitchell's claims into a single proceeding at this stage. The case is in its infancy. No discovery has been conducted. The discovery to be undertaken going forward will concern different facts as to Lawless and the police officer Defendants, and Mitchell's malicious prosecution and § 1983 will require separate testimony and documentary evidence as described above. Although Mitchell would not be prejudiced by pursuing his claims in separate forums, hearing all of the claims before this Court would force Lawless to incur attorney's fees to monitor and participate in extensive written discovery, depositions, and motions practice regarding three § 1983 counts that have nothing to do with the claim against her.

Mitchell's demand for a jury trial raises additional concerns "independent of jurisdictional considerations." *Gibbs*, 383 U.S. at 727. Allowing Mitchell to try his malicious prosecution claim alongside his three § 1983 claims risks "the likelihood of jury confusion" regarding Mitchell's "divergent legal theories of relief"; this concern further justifies "separating [the] state and federal claims for trial[.]" *Id.*

Finally, the Court should decline to exercise supplemental jurisdiction because Mitchell's decision to bring Lawless into this lawsuit appears to be have been improperly motivated by her former husband's desire to embarrass his ex-wife and Drake with the allegations in the Complaint in the hopes of playing the state and federal claims off of one another. "[A] federal court's wide

19

latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case." *Gibbs*, 383 U.S. at 727. Where, as here, "judicial economy, convenience and fairness to litigants [ . . . ] are not present," the Court "should hesitate to exercise jurisdiction over state claims[.]" *Id.*. at 726.

## II. The Complaint Should be Dismissed for Failure to State a Claim for Malicious Prosecution.

### A. Standard of Law.

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the "legal sufficiency" of the Complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). This Court has articulated the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6) as follows:

> For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true [ . . . ]. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679, 129 S.Ct. 1937. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, and mere recitations of the elements of a cause of action are insufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.
>
> In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680, 129 S.Ct. 1937. This can be crucial, as no such allegations count toward the Plaintiff's goal of reaching plausibility of

relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681, 129 S.Ct. 1937. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652–53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

*Carper v. Nissan N. Am., Inc.*, 820 F. Supp. 3d 716, 721–22 (M.D. Tenn. 2025).

### B.      Analysis.

Mitchell's claim against Lawless fails the test of Rule 12(b)(6). Mitchell makes no attempt to supply factual matter "respecting all the material elements to sustain a recovery under some viable legal theory." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009). Instead, Mitchell relies exclusively upon "[t]hreadbare recitals of the elements of [his] cause of action, supported by mere conclusory statements" to raise the very kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" rejected by the U.S. Supreme Court in *Iqbal*. 556 U.S. at 678.

Plaintiff's sole allegations giving rise to his malicious prosecution claim against Lawless are as follows:

> 38.     In addition, on two separate occasions, the Defendant Watechia Mitchell [Lawless] filed frivolous charges of violations of the Orders of Protection against Mario Mitchell (Case No. GS1077048) and (Case No. GS1070097). These false charges were made without probable cause and were dismissed in Plaintiff's favor on May 7, 2025 and September 23, 2025, respectively. As a consequence of these false charges, the Plaintiff was nonetheless arrested and charged with violation of his probation resulting in further incarceration.

> […]

> 60.     The warrants issued by the Defendant Watechia Mitchell [Lawless] against the Plaintiff (Case Nos. GS1077048 and GS 1070097) for alleged violation

21

of the Orders of Protection were false and maliciously [*sic*] and without probable cause. Both of these criminal charges were later resolved in favor of the Plaintiff.

61.     As a direct and proximate result of these malicious charges, the Plaintiff suffered damages in the form of attorney's fees, incarceration, mental anguish, embarrassment, humiliation and loss of enjoyment of life for which he is entitled to an award of both compensatory and punitive damages.

(Doc. No. 1, ¶¶ 38, 60–61).

"In order to establish the essential elements of an action for malicious prosecution," under Tennessee state law,[11] a "plaintiff must show that (1) a prior suit or judicial proceeding was brought against plaintiff without probable cause, (2) [the] defendant brought such prior action with malice, and (3) the prior action was finally terminated in favor of plaintiff." *Christian v. Lapidus,* 833 S.W.2d 71, 73 (Tenn. 1992).

With respect to the first and second elements, Mitchell's allegations parrot the case law formulation of a Tennessee state law claim for malicious prosecution without supplying any factual detail. Mitchell alleges in conclusory fashion that Lawless's charges for violations of the Orders of Protection in Case Nos. GS1077048 and GS1070097 were "frivolous," "false," "made without probable cause," and "malicious," but Mitchell does not allege any factual detail regarding what

---

[11] Mitchell has brought his Count III malicious prosecution claim under Tennessee common law, as evinced by the Complaint. First, Mitchell asks the Court to exercise federal question jurisdiction over Plaintiff's claims 42 U.S.C. § 1983 (*i.e.*, Counts I, II, and IV) and to exercise *supplemental* jurisdiction over his state law claims under 28 U.S.C. § 1367. (*See* Doc. No. 1, ¶ 3). Mitchell's Count III for malicious prosecution is the *only* claim Mitchell brings which is not a § 1983 claim. (*See* Doc. No. 1, ¶ 3). It is also the only claim brought against her, and it is not brought against any other Defendant. (*See* Doc. No. 1, ¶¶ 59–61 (Count III)). Second, the allegedly malicious prosecution at issue arose out of a state forum, not a federal forum. Third, although the Sixth Circuit does recognize a federal claim for malicious prosecution under 42 U.S.C. § 1983 "when the claim is premised on a violation of the Fourth Amendment," *see Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010), Mitchell does not style his malicious prosecution claim against Lawless as being brought under § 1983—nor could he do so, as Mitchell does not allege any facts suggesting that Lawless acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory[.]" *Cf.* 42 U.S.C. § 1983.

22

was "frivolous," "false," or "malicious" about Lawless's claims or *how* or *why* the charges were lacking in "probable cause." (Doc. No. 1, ¶¶ 38, 60). In fact, Mitchell does not even give this Court sufficient factual matter to ascertain precisely what Lawless claimed that Mitchell *did* that violated the Orders of Protection, or which Orders of Protection Lawless claimed that Mitchell violated. Mitchell's "formulaic recitation" of these two elements does not "plausibly suggest an entitlement to relief." *Carper*, 820 F. Supp. 3d at 722 (quoting *Iqbal*, 556 U.S. at 681). With respect to the third element, Mitchell does not even sufficiently recite all of the requisite elements to state a claim. Mitchell offers no facts regarding the termination of the charges in Case Nos. GS1077048 and GS1070097 beyond the conclusory allegation that "[b]oth of these criminal charges were later resolved in [his] favor." (Doc. No. 1, ¶ 60; *see also id.* ¶ 38). However, under Tennessee law, merely resolving in the plaintiff's favor is not enough: "With respect to the last of these requirements, a judgment that terminates a lawsuit in favor of one of the parties must address the merits of the suit rather than terminating the suit on procedural or technical grounds." *Himmelfarb v. Allain* 380 S.W.3d 35, 38 (Tenn. 2012). Moreover, in the context of a criminal charge, a favorable termination means not only a dismissal on the merits, but also *innocence*:

> [R]egardless of whether the underlying action was civil or criminal, a fact-intensive and subjective inquiry into the reasons for and circumstances leading to the disposition is not permissible. [ . . . ] Particularly where the underlying proceeding was criminal, the possibility of future discovery is not only daunting, but will be costly and time-consuming. Former prosecutors will be difficult to locate and might not have notes or recollection of their reasons for dismissing a criminal case. In criminal cases, prosecutors should feel free to dismiss cases if they conclude that the public interest is served by doing so without concern that they will be subject to later discovery regarding their reasons for dismissal, and citizens should not be deterred from providing information to prosecutors.
>
> Moreover, there are numerous reasons why a prosecutor might decide to dismiss a case. For instance, dockets may become overcrowded, a prosecutor's primary witness may be afraid to testify, or it may be difficult for the prosecutor to gather evidence in a timely manner. Although there is a presumption of innocence in criminal cases, a dismissal does not, by virtue of that, indicate innocence or that

23

the action is without merit. These other possibilities demonstrate that while a lack of evidence is certainly one possible reason to dismiss a case, it is far from the only possible reason.

We now clarify that the favorable termination standard [ . . . ] applies regardless of whether the underlying dismissal involves a criminal or civil action. A plaintiff can pursue a claim for malicious prosecution only if an objective examination, limited to the documents disposing of the proceeding or the applicable procedural rules, indicates the termination of the underlying criminal proceeding reflects on the merits of the case *and* was due to the innocence of the accused.

*Mynatt v. Nat'l Treasury Emps. Union, Chapter 39*, 669 S.W.3d 741, 752 (Tenn. 2023) (emphasis added). In *Mynatt*, the Tennessee Supreme Court considered a complaint in which the plaintiff had alleged a "favorable termination" of a criminal charge but failed to either allege the existence of, or attach to the complaint, a dismissal order that—without any discovery and based solely on an objective examination of the documents disposing of the proceeding—showed that the dismissal reflected on the merits and indicated innocence. *Id.* at 752–53. Accordingly, the Court affirmed the trial court's dismissal of the plaintiff's malicious prosecution claim. *Id.* at 753.

Here, Mitchell does not state even a conclusory, threadbare claim for malicious prosecution because he does not at any point aver or otherwise allege facts showing that the Case Nos. GS1077048 and GS1070097 terminated in his favor *on the merits* and due to his *innocence* as opposed to procedural or technical grounds, much less identify any order which indicates as much. *Cf. id.* Thus, Mitchell's Count III claim against Lawless fails to satisfy the standard articulated by the Tennessee Supreme Court in *Mynatt*. Because *Mynatt* demonstrates that Mitchell's claim would fail even under Tennessee's more forgiving liberal notice pleading standard, Mitchell's Complaint

certainly fails the federal plausibility standard in *Iqbal*.[12] *See generally Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422 (Tenn. 2011) (distinguishing between the state and federal standards). Mitchell's claim for malicious prosecution improperly relies upon "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," and "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations omitted). Such legal conclusions couched as factual allegations "need not be accepted as true," *Fritz*, 592 F.3d at 722, and do not "count toward [Mitchell's] goal of reaching plausibility of relief." *See Carper*, 820 F. Supp. 3d at 722.

For these reasons, Mitchell's claim for malicious prosecution lacks facial plausibility and should be dismissed with prejudice under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Mitchell's Count III claim against Lawless for malicious prosecution should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).

---

[12] Furthermore, Mitchell's own allegations call into question his conclusory averment that Lawless's charges were made "without probable cause" or resolved in his favor because Mitchell avers that he was "nonetheless arrested and charged with violation of his probation resulting in further incarceration" "[a]s a consequence of" Lawless's charges. (Doc. No. 1, ¶ 38). Mitchell fails to offer sufficient factual matter to plausibly allege that Lawless's charges lacked probable cause or that the charges were terminated in his favor given that Mitchell simultaneously alleges that the charges resulted not just in his arrest, but "further incarceration." (*Cf. id.*).

25

Respectfully submitted,

*/s/ Kendra E. Samson*
Kendra E. Samson (TN BPR #018976)
Eric C. Lyons (TN BPR #036105)
BUCHALTER LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
Tel.: (615) 986-3732
ksamson@buchalter.com
elyons@buchalter.com

*Counsel for Defendant Watechia
Lawless Mitchell*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 22, 2026 a true and exact copy of the foregoing was served upon the persons list below via the Court's Electronic Case Filing System:

Allison L. Bussell (TN BPR #23538)
Melissa Roberge (TN BPR #26230)
Peter G. Vizcarrondo (TN BPR #43651)
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
Tel.: (615) 862-6341
allison.bussell@nashville.gov
melissa.roberge@nashville.gov
peter.vizcarrondo@nashville.gov

Larry L. Crain (TN BPR # 009040)
Emily A. Castro (TN BPR #028203)
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel.: (615) 376-2600
larry@crainlaw.legal
emily@crainlaw.legal

*/s/ Kendra E. Samson*
Kendra E. Samson (TN BPR #018976)

26